IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VENADA VANCE THOMAS,<br><br>        Plaintiff,<br>v.<br><br>THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant.<br>_____/ | **No. C 08-05769 RS**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### I. INTRODUCTION

In this Social Security case, plaintiff Venada Vance Thomas appeals a decision by the Commissioner of the Social Security Administration (the "Commissioner"), which denied her application for disability insurance benefits on the grounds that she was not disabled. For the reasons stated below, summary judgment is granted in favor of Thomas.

### II. FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from the decision rendered by the Administrative Law Judge ("ALJ") on March 22, 2007, and the accompanying Administrative Record ("AR"). Born on September 11, 1954, Thomas was 52 years old at the time of her October 25, 2006, administrative hearing before the ALJ. AR at 471, 473. At the hearing, she testified that she had a GED and that

MEH

1

she was attending San Jose City College, where she had already completed 56 credits and had 14 more credits in progress. *Id*. at 473. She attended classes Monday to Thursday, one class per day. *Id.* at 474-75. She lived with her 38-year-old son and helped look after his five children. *Id.* at 478-79. Thomas last worked from 2001 to 2004 as a child caregiver. *Id.* at 481. In the ten years before that job, she held various other jobs as a cook at a family shelter, a medical bill administrator, a coordinator at a home health agency, and an administrative assistant. *Id.* at 483-84, 490. All of these jobs except for the childcare and cook positions involved data entry and computer work.

She filed a Title II application for disability insurance benefits on March 13, 2002. *Id.* at 20. At her hearing, when she was asked to describe her medical problems, Thomas reported stiffness and weakness in both of her arms and hands, which prevented her from typing, writing, driving a car, and fastening buttons and zippers. *Id.* at 475. She explained she had been diagnosed with carpal tunnel syndrome in 2002, but had never experienced any relief because she was afraid to undergo surgery. *Id.* at 476. She stated that her legs were weak and sometimes gave out on her. *Id.* at 477. She also stated that she had been diagnosed with diabetes but had been "fighting" her doctor about taking insulin, due to her fear of needles. *Id.* Finally, she described a car accident in March 2006 which had injured her back, neck, and shoulders, leaving them painful and stiff. *Id.* at 478. A cervical MRI taken at the time revealed mild degenerative changes with borderline stenosis at C3-4. *Id.* at 24.

The medical record generally supports Thomas's assertions at the hearing. An examining physician in 2004 found that she suffered from obesity, diabetes, carpal tunnel syndrome, arthritis, asthma, degenerative joint disease in her knees, obstructive sleep apnea, hypertension, and high cholesterol. *Id.* at 24, 202-05. A Social Security consultative examiner examined Thomas in 2004 and similarly determined that she had Type II diabetes, carpal tunnel syndrome, and arthritis. *Id.* Nonetheless, the consultative examiner opined that Thomas could perform a range of light work. *Id.* Specifically, she was able to sit, stand, and walk for up to six hours with occasional rest; she had moderate limitations in bending, squatting, and kneeling; and she could do limited repetitive hand motion and fingering. *Id.*

MEH

2

There were several indications in the record of Thomas's poor compliance with prescribed medical regimens and with the instructions of her treating physicians. Specifically, she refused insulin treatment for her diabetes, citing a fear of needles; and she refused evaluation for carpal tunnel surgery on two occasions, citing her fear of surgery due to complications from her diabetes. Similarly, she had been discharged from a nutrition clinic due to lack of attendance. A treating physician in 2004 noted she did not take her prescribed obesity medication, did not exercise, and was a smoker until September 2003. *Id.* at 23-24, 203.

Based on this evidence from the hearing and the administrative record, the ALJ concluded on March 22, 2007, that Thomas was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 26. Thomas requested review by the Appeals Council, and this request was denied on October 24, 2008. *Id.* at 5. Thomas then filed the instant complaint on December 29, 2008. She and the Commissioner have filed cross-motions for summary judgment.

### III.  LEGAL STANDARD

A.  <u>Standard for Reviewing the Commissioner's Decision</u>

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying benefits to Thomas. The ALJ's decision must be affirmed if its findings are supported by substantial evidence and grounded upon correct legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir.1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—[it] is such reasonable evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin*, 966 F.2d at 1257. When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, however, the Court must defer to the ALJ's decision. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

B.  <u>Standard for Determining Disability</u>

MEH

3

A person is "disabled" for purposes of receiving Social Security benefits if he or she is unable to engage in any substantial gainful activity, due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

Social Security disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity ("SGA");[1] if so, the claimant is not disabled, and the claim must be denied. *Id.* If the claimant is not engaged in SGA, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limit the claimant's ability to perform basic work activities; if not, the claimant is not disabled, and the claim must be denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the "impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, subpart P, Appendix 1." *Id.* In the fourth step, the Commissioner must determine whether the claimant has sufficient "residual functional capacity"[2] ("RFC") to perform his or her past work; if so, the claimant is not disabled and the claim again must be denied. *Id.* The claimant has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, the claimant has established a *prima facie* case of disability. In the fifth step of the sequential analysis, which then follows, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work.[3] *Id.*; 20 CFR §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

---

[1] SGA is work that involves significant physical or mental activities performed for pay or profit. *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

[2] A claimant's residual functional capacity is what he or she still can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir.1989).

[3] There are two ways in which the Commissioner may meet the burden of showing that there is other work in significant numbers in the national economy that the claimant can perform: (1) by the

MEH

4

## IV. ANALYSIS

Here, the ALJ conducted the five-step analysis described above and concluded that (1) Thomas was not currently engaged in substantial gainful activity, and had not done so since December 2006; (2) she had three "severe" impairments: diabetes mellitus, cervical degenerative disc disease, and wrist pain; and (3) she did not have a listed impairment that met or medically equaled the criteria of an impairment listed in 20 CFR Part 404, subpart P, Appendix 1. AR at 22-23. As to the fourth step, the ALJ determined that Thomas had an RFC sufficient "to perform a wide range of light work: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand/walk for 6 hours in an 8-hour day; and, 50% repetitive use of the bilateral hands." *Id.* at 23. Therefore, he determined she was not disabled. The bulk of the controversy in this appeal surrounds the ALJ's findings and conclusions at this fourth step.

### A.  Fourth Step: Residual Functional Capacity

Thomas's principal contention is that the ALJ's RFC finding is not supported by substantial evidence. An RFC finding must be premised on the proper legal standard and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In marshalling such evidence, there are generally three types of medical opinions that are considered: those from treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has constructed a hierarchy of such opinions, with those of treating physicians at the top and examining physicians in the middle. The opinions of non-examining physicians, who have often never laid eyes on the claimant, are generally afforded the least weight. *Id.* As the Code of Federal Regulations explains, a claimant's treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

---

testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999).

MEH

5

examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

ALJs are authorized to depart from the hierarchy of physician opinions in making their decisions, but only if they make findings "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Furthermore, the Ninth Circuit has held that the opinion of a non-examining doctor cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician. *Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999). The rejection of the opinion of an examining or treating physician may, however, be based in *part* on the testimony of a nontreating, non-examining medical advisor, when consistent with other independent evidence in the record. *Id.* Generally, "[t]he weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

In this case, the record contains opinions pertinent to Thomas's RFC from two treating physicians, two examining physicians, and one non-examining physician. The ALJ concluded that the opinion of the non-examining consultant, Dr. Chokatos, was the most persuasive as to RFC, and he went on to reject the opinions of the other four physicians. His RFC assessment also expressed several concerns about Thomas's own credibility, noting that, while Thomas's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," nonetheless her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." He explained that her credibility was impacted by several indications in her medical record where she had refused to follow her doctors' advice: most significantly, her refusal to take insulin because she was afraid of needles, and her refusal to undergo treatment for her carpal tunnel syndrome because she was afraid of surgery. Based on these reasons, the ALJ found that there was a wide range of light work that Thomas was capable of performing and that, consequently, she was not entitled to disability benefits.

MEH

6

No. C 08-05769 RS
ORDER

The ALJ's heavy reliance on the optimistic opinion of Dr. Chokatos appears unwarranted. As the *Ryan* case held, the weight properly afforded a non-examining physician's testimony depends "'on the degree to which they provide supporting explanations for their opinions.'" *Ryan*, 528 F.3d at 1201 (quoting 20 C.F.R. § 404.1527(d)(3)). Dr. Chokatos's opinion falls woefully short in this regard; his RFC assessment is simply a few pages of checked boxes, with no supporting explanations at all. Furthermore, aside from his discussion of Thomas's perceived unreliability as a witness, the ALJ did not explain why he found Dr. Chokatos's opinion of Thomas's RFC to be persuasive, nor why such a cursory assessment would play an outcome-determinative role. In contrast to Dr. Chokatos, Thomas's examining physicians were very guarded in their assessments of her RFC—Dr. Gable stated that "fingering and grasping are certainly limited" and Dr. Madireddi cautioned her to "avoid repetitive pushing, pulling, reaching, feeling, fingering, or handling." Moreover, her two treating physicians—the medical professionals who, according to the regulations, are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)"—painted an even bleaker picture: as early as 2003, Dr. Kurani stated that Thomas would only be able to work, at most, 4 hours a day; and Dr. Nguyen characterized her prognosis as "poor" and stated that her pain and illness would interfere "constantly" with her work. Although the ALJ explained his reasons for discounting Dr. Nguyen's opinion,[4] he gave no reasons for rejecting the other three doctors' RFC assessments.

The ALJ's finding that Thomas had sufficient RFC to perform her past work is not supported by substantial evidence—that is, "evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. One non-examining physician's highly optimistic opinion is not reasonably adequate to support the ALJ's RFC finding, especially since that opinion is at odds with the pessimistic opinions of four other treating or examining physicians

---

[4] Specifically, he cited inadequacies in Dr. Nguyen's opinion, as to both the "length of the treatment relationship" (4 months) and the "nature and extent of the treatment relationship" (diabetes only). He also raised questions about "supportability," noting that Dr. Nguyen opined Thomas had problems in her lower extremities, but that no source was identified for these problems. *See* 20 C.F.R. § 404.1527(d)(2)(i) & (ii), (d)(3) (listing factors the ALJ should consider in evaluating a controverted opinion from a treating physician).

and is also unsupported by the bulk of the record. *Morgan*, 169 F.3d at 602 (prohibiting decision-makers from rejecting the opinions of treating and examining physicians in favor of a non-examining physician, unless the non-examiner's findings are otherwise consistent with the record). For these reasons, the ALJ erred in assessing Thomas's RFC in the fourth step of his analysis. Further, because opinions from two of her treating physicians and two of her examining physicians unanimously indicate that Thomas has an extremely limited ability to grasp and use her fingers, Thomas has met her burden of proving that she is unable to perform her past relevant work in childcare, cooking, and administrative positions. Thus, Thomas has successfully established a *prima facie* case of disability at the fourth step.

B.  Fifth Step: Performance of Other Substantial Gainful Work

In the fifth step of the sequential analysis, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work. 20 C.F.R. §§ 404.1520, 416.920. As noted above, there are two ways in which the Commissioner may meet the burden of showing that there is other work in significant numbers in the national economy[5] that the claimant can perform: (1) by the testimony of a vocational expert ("VE") or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In this case, the ALJ was not technically obligated to reach the fifth step, because he found at the fourth step that Thomas was not disabled. Nonetheless, he did make an alternate finding at step five that "even if the claimant could not perform past relevant work, she would not be disabled," citing both evidence from a VE and the framework of the Medical-Vocational Guidelines.

Thomas challenges this fifth-step finding, contending, among other things, that the ALJ's suggestion that "the claimant could perform work as a furniture rental consultant" was unfounded because the evidence is undisputed that only about 100 such jobs exist in the regional economy. The Commissioner concedes the argument, agreeing that "the ALJ's alternative step five finding is

---

[5] For Social Security purposes, "work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

MEH

8

No. C 08-05769 RS
ORDER

inadequate based on the number of alternative jobs identified." The case law, moreover, supports the parties' conclusion. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 619 (E.D. Tex. 2009) (surveying the nationwide case law on "significant numbers"). For these reasons, it is concluded that the Commissioner has failed to meet his step-five burden of proving that there is other work in significant numbers that Thomas's limited RFC will enable her to perform.

## V. CONCLUSION

As Thomas has successfully established a *prima facie* case of disability, and the Commissioner has failed to meet his burden of showing that alternative work exists that Thomas can perform, Thomas's motion for summary judgment will be granted, and likewise the Commissioner's cross-motion for summary judgment will be denied. Therefore, the ALJ's decision is hereby modified to provide that Thomas is disabled under the Social Security Act. This claim is remanded for the sole purpose of calculating and initiating payment of disability benefits.

IT IS SO ORDERED.

Dated: 01/05/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

MEH

9

No. C 08-05769 RS
ORDER